J-S25014-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| M.F.E. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| C.K. | : | |
| | : | |
| Appellee | : | No. 1559 WDA 2017 |

Appeal from the Order September 27, 2017
In the Court of Common Pleas of Westmoreland County
Civil Division at No(s):  33 of 2014-D

BEFORE:  GANTMAN, P.J., PANELLA, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED MAY 09, 2018**

Appellant, M.F.E. ("Father"), appeals from the order entered in the Westmoreland County Court of Common Pleas, which retained primary physical custody of the parties' minor child, Z.M.E. ("Child"), with Appellee, C.K. ("Mother"), subject to Father's periods of increased partial physical custody.  We affirm.

In its Opinion and Order dated September 27, 2017, the trial court accurately set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Father raises one issue for our review:

> WHETHER THE TRIAL COURT'S AWARD OF PRIMARY CUSTODY TO MOTHER WAS IN ERROR AND AGAINST THE WEIGHT OF THE EVIDENCE WHEN THE TRIAL COURT'S FINDINGS OF FACT CONCLUDED THAT THE STATUTORY FACTORS FOR CUSTODY FAVORED FATHER?

(Father's Brief at 4).

In reviewing a child custody order:

> [O]ur scope is of the broadest type and our standard is abuse of discretion. This Court must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation omitted). "With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child." *A.D. v. M.A.B.*, 989 A.2d 32, 36 (Pa.Super. 2010).

When deciding whether to modify an existing custody order, the trial court must consider all of the factors set forth at 23 Pa.C.S.A. § 5328(a). *J.R.M. v. J.E.A.*, 33 A.3d 647 (Pa.Super. 2011). The amount of weight a trial court gives to any one factor is largely within the court's discretion. *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa.Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013) (explaining trial court's purview, as finder of fact, is to

determine which factors are most salient and critical in each particular case). The trial court must give weighted consideration to those factors which affect the safety of the child. 23 Pa.C.S.A. § 5328(a).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Timothy A. Krieger, we conclude Father's issue merits no relief. The trial court's Opinion and Order comprehensively discusses and properly disposes of the question presented. (*See* Opinion and Order, dated September 27, 2017, at 4-13) (examining each relevant factor under applicable statute; maintaining primary physical custody of Child with Mother and increasing periods of Father's partial physical custody is in Child's best interest).[1] Accordingly, we affirm on the basis of the trial court's opinion.

Order affirmed.

_____

[1] Father is correct that the trial court found more of the applicable custody factors favored Father. Nevertheless, the court decided factors three (parental duties performed by each party on behalf of the child) and four (the need for stability and continuity in the child's education, family life, and community life), favored Mother. In its analysis of factor four, the court discussed Child's autism diagnosis. The court doubted that the benefits of granting Father primary physical custody in Texas "will outweigh the potentially serious psychological and emotional damage that may well be caused by an abrupt removal from Mother's primary physical custody." (Opinion and Order at 6). The record supports the court's analysis, particularly in light of Dr. Bush's report and testimony about the emotional turmoil Child could face if he were removed from Mother's primary custody at this juncture, given Child's autism diagnosis. We will not second guess the weight the trial court gave factors three and four, when it decided to continue primary physical custody with Mother. *See* 23 Pa.C.S.A. § 5328(a); *M.J.M., supra*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  5/9/2018

Circulated 05/02/2018 12:22 PM

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY
COMMONWEALTH OF PENNSYLVANIA
CIVIL DIVISION – CUSTODY**

M. F. E.
    Plaintiff,     )
             )
   v.          )  No. 33 of 2014-D
             )
C. K.          )
    Defendant.     )

<u>**OPINION AND ORDER OF COURT**</u>

KRIEGER, J.             September 27, 2017

  This matter is before the Court on Plaintiff's Petition to Modify Custody, filed on April 10, 2015, and the Order of Court dated February 7, 2017. A custody trial was held before the Court on September 5 and 6, 2017 ("Trial"), to determine custody of the minor child, Z. M. E.    born September 2006 ("Child"), as between the Child's natural father and mother, respectively, Plaintiff M. F. E.    ("Father") and Defendant C. K.

  ("Mother"). At Trial, Mother appeared and was represented by counsel, J. Douglas Farrell, Esquire, Father appeared and was represented by counsel, Elizabeth J. McCall, Esquire, and the Guardian ad Litem, Jason N. Huska, Esquire, appeared on behalf of the best interests of the Child.

  Pursuant to Pennsylvania law, in ordering any form of custody in this case, the Court must determine the best interests of the Child by considering all relevant factors, giving weighted consideration to those factors affecting the Children's safety, including the factors enumerated in 23 Pa.C.S.A. § 5328. The Court will begin its analysis with a brief history of the Child's family based upon the testimony presented at Trial and the procedural history of the case, followed by the Court's particular findings and conclusions relevant to each custody factor under § 5328.

## FACTS

### INTRODUCTION

  Mother and Father met online in 2004 while Father was in graduate school for engineering in Michigan and Mother lived in Bradenville, Pennsylvania. They met in person twice before being married later the same year in December in Father's home country of Egypt.



Shortly after the wedding, Mother and Father lived together in Egypt for approximately one-and-a-half years before Mother moved back to Bradenville, around June 2006, to live with her mother, D. K. ("Maternal Grandmother"), while pregnant with the Child; Father remained in Egypt until August 2007 to fulfill a two-year employment contract as a professor of engineering at Tanta University. The Child was born approximately nine weeks premature on September 1, 2006. Father first saw the Child just before his first birthday in August 2007.

Father first moved to the United States in 1999 to pursue his Ph.D. in structural engineering from Michigan State University. He stayed for approximately six years and then moved back to Egypt, worked for two years, and then returned in August 2007 and lived with Mother and Maternal Grandmother in Maternal Grandmother's two-bedroom trailer in Bradenville, Pennsylvania. After one month with Mother and the Child, Father moved to Tulsa, Oklahoma for a six-month provisional employment with Linde Engineering. As the job offer with Linde was provisional, Mother and the Child remained in Pennsylvania with Maternal Grandmother. Father was ultimately offered the job and has worked for Linde ever since. While in Oklahoma, Father would return to Pennsylvania to visit Mother and the Child. Mother and the Child visited Father in Oklahoma for the first time in February 2011 for approximately two weeks. However, due to a domestic dispute, Mother abruptly left Father and returned to Pennsylvania. The parties were divorced a few months later on May 2, 2011, by an Egyptian decree. Prior to Father's filing of this action in January 2014, Father last saw the Child in Oklahoma in February 2011. In the four years between August 2007, when Father first met the Child, and February 2011, when Father last saw the Child prior to litigation, Father spent less than 130 days with the Child, all but fourteen of which were while Father visited Mother and Child in Bradenville.

In January 2012, Father entered into an arranged marriage with O. S. . The two live in Tulsa, Oklahoma, but closed on a four-bedroom house in Houston, Texas on September 1, 2017. Their move to Texas is imminent and Father will continue working for Linde in Houston. Father's wife is currently pregnant and their child is due in March 2018. Father and his wife have both become United States citizens; Father remains a citizen of Egypt, as well.

2

Mother and the Child currently share a bedroom in Maternal Grandmother's two-bedroom trailer in Bradenville, Pennsylvania. Mother received a GED in 1998. She was previously married and lived in Dallas, Texas, where she still has friends. Mother converted to Islam in 2001 and practiced through 2011. Mother last worked around January 2006 while with Father in Egypt, where she was a first grade teacher from around August 2005 until February 2006 when she learned she was pregnant with the Child.

## PROCEDURAL HISTORY

Father initiated this action for custody of the Child on January 7, 2014, when the Child was seven years old. Father had not seen the Child since February 2011. A custody conciliation conference (CCC) was held in March 2014, however, Father was unable to attend because his flight was cancelled. Pursuant to Amended Order of Court dated March 18, 2014, Mother was granted sole legal and primary physical custody of the Child and Father was granted professionally supervised visits, to take place in Westmoreland County, and the parties were encouraged to engage parent-child reconciliation (PCR) counseling via skype. Based upon allegations that Mother was frustrating Father's attempts at contact with the Child, Father specially petitioned and was granted telephone or skype visits with the Child, supervised by Justice Works, and in-person PCR counseling through Grace Wellness Center by Orders dated July 14 and August 5, 2014. Father filed a Petition to Modify Custody and a Motion for Special Relief in September and October 2014, and Father was granted supervised visits with the Child while present in Westmoreland County for the CCC scheduled on his petition to modify and Mother was ordered to engage the Child in PCR counseling with Grace Wellness. Following a CCC on November 14, 2014, by Order of Court dated December 5, 2014, Father was granted shared legal custody of the Child, a minimum of six hours of monitored visitation with the Child every day Father is in Westmoreland County, and private telephone contact with the Child at specific times. The November 2014 CCC Order further appointed Jason N. Huska, Esquire, as Guardian ad Litem (GAL) for the Child.

Father filed a Petition to Modify Custody in April 2015, and a CCC was held thereon in June 2015. Prior to the scheduled CCC in June, Mother filed an Emergency Petition seeking to suspend Father's visits. The Court entered an Interim Order of Court dated June 8, 2015, which cancelled the upcoming CCC and granted Father up to five overnight visits with the Child in

3

Westmoreland County monitored by Justice Works or the GAL. The GAL requested a review conference in July 2015, based upon the GAL's concerns that Mother may be alienating the Child from Father. By Order dated August 31, 2015, the Court ordered that the Child begin counseling with Dr. Mary Griffin, if the parties could not agree upon another counsellor, which they could not. Father filed a Petition for Contempt and Special Relief in November 2015, upon which the Court ordered that the Child undergo a psychological evaluation by Dr. Eric Bernstein by Order dated November 13, 2015.

A review conference was held in February 2016, following which the Court again ordered that the Child undergo a psychological and custody evaluation by Dr. Bernstein and ordered Mother to cooperate. Following a review conference in September 2016, the Court ordered that the Child undergo an additional psychological evaluation by Dr. William E. Bush. A review conference was scheduled for February 2017, however, Mother was unable to attend due to being hospitalized and so the review did not occur on the consent of the parties and a trial was scheduled for May 2017. By Orders dated May 2, 2017, Trial was rescheduled for September 5 and 6, 2017, and Father was granted ten days of custody of the Child in Westmoreland County. By Order dated July 20, 2017, Father was granted seven consecutive days of custody of the Child in August prior to Trial.

At Trial, Father sought primary physical of the Child and Mother acquiesced to counseling for the Child to achieve a graduated increase in Father's custodial time ultimately aimed to allow Father extended custodial periods in Texas.

And so, having reviewed the testimony and evidence presented at Trial, the Court makes the following findings and conclusions regarding custody of the Child, Z. M. E.

## CUSTODY FACTORS

"In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child." 23 Pa.C.S.A. § 5328(a). The Court will analyze each of the sixteen custody factors set forth in § 5328(a), as well as providing further recitation of the facts relevant to each factor therein.

4

### 1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

No evidence was presented at Trial that would tend to show that Father would not encourage contact between the Child and Mother. While Father certainly believes that the Child's education and emotional well-being will be advanced by his being granted primary physical custody, he does not seem to believe that Mother's relationship with the Child is unimportant.

There is every reason to believe, however, that Mother has and will continue to discourage contact between Father and Child. Dr. Bush testified that Mother and Child have, what he termed, a "symbiotic relationship," which is threatened by the existence of any outside influences. Perhaps as a result, she has resisted allowing anyone or anything to assume any position of importance in the Child's life other than her. And despite her protestations to the contrary, it is likely that Mother will continue to come up with excuses to keep the Child in the psychological "box" in which she has placed him.

Accordingly, the Court finds that consideration of the first custody factor strongly favors Father.

### 2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

Undisputed evidence was presented that the parties were involved in a domestic incident in February 2011 while Mother and the Child were with Father for a brief time in Oklahoma. However, no evidence was presented by either party providing details of that incident from which the Court can infer any degree of responsibility for the incident or whether any degree of violence was even involved.

Accordingly, the Court finds that consideration of the second custody factor favors neither party.

### 2.1 The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

5

No allegations of abuse or involvement with protective services, past or present, have been raised in this matter either at Trial or prior thereto. As such, this custody factor is not applicable to this Court's decision.

### 3. *The parental duties performed by each party on behalf of the child.*

From the testimony set forth at time of Trial, Father has been absent from the Child's life for the majority of the Child's first eight years of life. Some of this absence is a direct result of Mother's efforts to exclude him, particularly since the inception of this litigation in January 2014 and, to a lesser degree, in the three years prior thereto since February 2011. Some, however, is Father's responsibility, directly arising from his choices to have Mother and the Child live separate and apart from him in Oklahoma. For purposes of the Court's consideration of the third custody factor, however, the reasons for their separation are largely meaningless, as during this time Mother performed the vast majority of the parental duties.

Accordingly, the Court finds that consideration of the third custody factor favors Mother.

### 4. *The need for stability and continuity in the child's education, family life and community life.*

Testimony offered at Trial suggests that the Child's life with Mother here in Pennsylvania is sharply circumscribed by the very small circle in which Mother has placed the Child. Insofar as stability is defined in a very narrow sense, Mother is best able to provide the Child with stability and continuity; this is, however, because Mother cannot or will not permit or encourage the Child to reach beyond Mother's small circle. If stability is more broadly defined to include helping the Child be become less emotionally dependent on Mother, and to mature both psychologically and emotionally, then Father may well be better equipped to do so, even if simply by default. Compounding the difficulties of this case is the Child's diagnosis of autism. Based upon all of the evidence before the Court, it is not clear that the benefits of removing the Child from the "box" in which he has been placed will outweigh the potentially serious psychological and emotional damage that may well be caused by an abrupt removal from Mother's primary physical custody.

6

Accordingly, the Court finds that consideration of the fourth custody factor slightly favors Mother.

## 5. *The availability of extended family.*

Mother and the Child live with the Child's maternal grandmother, D. K., but beyond that Mother and the Child appear to have little contact with other members of Mother's extended family, if indeed Mother even has further extended family. From the evidence set forth at Trial, Father's extended family lives in Egypt. Father's physical contact with his extended family appears to be limited to one time per year during an annual visit to Egypt.

Accordingly, the Court finds that consideration of the fifth custody factor favors neither party.

## 6. *The child's sibling relationships.*

The Child has no siblings at present. Father and his wife, O. S., testified that she is pregnant, and due to give birth in March 2018. The Child will thus have a half-sibling living in Houston, Texas.

Accordingly, the Court finds that consideration of the sixth custody factor slightly favors Father.

## 7. *The well-reasoned preference of the child, based on the child's maturity and judgment.*

The Child expressed a clear preference to remain in Mother's primary physical custody. The Child's statement in this regard, however, like the many contradictory statements regarding his Father and their relationship that the Child has made throughout the life of this case, more so evidence the damage caused by the Child's unhealthy, dependent relationship with Mother, than the Child's well-reasoned preference. Many of the fears the Child expressed regarding his Father and incidents complained of during their visits where Father does not listen to the Child or does not stop some activity their engaged in when asked, though perhaps real enough to the Child, appear baseless.

The evidence presented at Trial was not dispositive of whether the Child's outlook is a result of a pattern of alienation on the part of Mother, or is a product of the Child's autism. It appears most likely to the Court to be a cumulative result of both. In any case, however, the Court finds that the Child's stated preference is not well reasoned, and that the Child's maturity and judgment have been hamstrung by his "symbiotic relationship" with Mother.

As such, the Court finds that consideration of the seventh custody factor favors neither party.

## 8. *The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.*

Mother has proven willing to "defend" the Child from outside influences that she views threaten their relationship. Such influences include the Child's development of a relationships with Father and peers and participation in independent activities outside of the home. Based upon Dr. Bush's testimony, Mother's protectionist behaviors may in part be subconsciously based upon her unhealthy "symbiotic relationship" with the Child. Nevertheless, the Child has clearly been influenced by and absorbed Mother's defensive posture against Father. In fact, to a great degree, the Child's fears and concerns regarding Father seem to be coming directly from Mother.

On the other hand, Father does not appear to have made any attempts to alienate the Child from Mother. This may only be, however, because Father has had very limited contact with the Child and thus less opportunity to alienate the Child from Mother.

Given the intensity of the Mother's efforts, the Court finds that consideration of the eighth custody factor favors Father.

## 9. *Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.*

Mother's relationship with the Child will likely continue to be strong. Based upon the evidence presented at Trial, however, it will also likely remain unhealthy, to the likely point of debilitating the Child in the future.

Based upon Father's testimony, video and photographs and portions of the Child's testimony, Father seems have a loving and nurturing relationship with the Child during his limited visits. Given his limited contact with the Child over the years, it is difficult to assess the Father's ability to maintain a loving, stable, consistent and nurturing relationship with the Child

Accordingly, the Court finds that consideration of the ninth custody factor favors neither party.

### 10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

Both parties are likely to attend to the daily, physical, emotional, developmental, educational and special needs of the Child, as each perceives those needs. For the reasons set forth in the Court's analysis of custody factors three and nine above, it is difficult to assess Father's ability to attend to the foregoing daily needs of the Child, as Father's day-to-day contact has been so limited. Father is an educated man who clearly places a high value on the education of his son; his wife also has a graduate degree and, while living in Oklahoma, she worked as a supply chain analyst. Father and his wife are thus likely to better attend to the Child's educational needs. Even though it is difficult to assess Father's ability to attend to Child's other needs, it is certainly the case that during the limited visitation he has had with the Child he has been able to connect emotionally with Child and to meet the Child's daily needs.

For the reasons discussed above, Mother appears able to meet the Child's daily physical needs, however, based upon the testimony of Dr. Bush, it appears Mother has not been healthily or adequately meeting the Child's emotional, developmental or special needs.

Therefore, the Court finds that consideration of the tenth custody factor slightly favors Father.

### 11. The proximity of the residences of the parties.

Mother and the Child reside in Westmoreland County. Father resides in Houston, Texas. The Child has lived with Mother and Maternal Grandmother for his entire life. Any move to Texas with Father, without Mother, particularly given the Child's autism, will very likely cause substantial emotional turmoil for the Child. On the other hand, however, a move to Texas, though painful and perhaps damaging to the Child, would certainly give him an opportunity to

break out of the "box" of Mother's making, i.e., the Child's unhealthy "symbiotic relationship" with Mother, which dominates his life in Bradenville. Dr. Bush testified that Mother's symbiotic relationship with the Child has not yet reached an irreversible point, from which developing a healthy parent-child relationship with Father cannot be attained, because the Child is still young. However, Dr. Bush testified that time is of the essence for therapeutic intervention.

Based upon the foregoing, the Court finds that consideration of the eleventh custody factor favors increasing Father's periods of uninterrupted custodial time in a graduated schedule, in conjunction with therapy for the Child, ultimately aimed to achieve split physical custody in the summer of 2018.

## 12. Each party's availability to care for the child or ability to make appropriate child-care arrangements.

The testimony provided at the time of Trial indicates that Mother relies upon Maternal Grandmother, who is sixty-nine years old, for alternative child care and wholly for transportation, as Mother does not have a driver's license, and never has. Both Father and his wife testified that, while ○.S. worked as a supply chain analyst in Oklahoma, she has not sought employment in Texas and will continue as a stay-at-home mother to raise the couple's upcoming first child, and the Child should Father be given primary custody.

Accordingly, the Court finds that consideration of the twelfth custody factor favors neither party.

## 13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

The conflict between the parties is high, as it has been throughout most of Child's life. Mother has been to a large extent unwilling to cooperate with Father to make a long-distance relationship between Father and son workable. As a result, Father has exhibited some animosity toward Mother, but not in a way which is visible to the Child.

Certainly, Father has been too passive with Mother as it concerns his relationship with the Child and involvement in the Child's life.

10

Accordingly, the Court finds that consideration of the twelfth custody factor favors Father.

### 14. *The history of drug or alcohol abuse of a party or member of a party's household.*

No allegations of drug or alcohol abuse, past or present, have been raised in this matter either at Trial or prior thereto. As such, the fourteenth custody factor is not applicable to this Court's decision.

### 15. *The mental and physical condition of a party or member of a party's household.*

Father struggles with a certain dislocation resulting from cultural differences he continues to experience as an Egyptian native now living in the United States. Several instances of his behavior, however, have raised concerns regarding Father's stability, particularly his marrying Mother a short time after meeting her online, his willingness to enlist Mother and the Child in some sort of a scheme related to providing false documentation to his Egyptian-government employer, and his absence from Mother and the Child's life from March 2011 until initiating this custody action in January 2014

Mother evidences a level of dysfunction by her codependent relationship with the Child and, likewise to Father, in marrying shortly after meeting him online and then acquiescing to living separate and apart from her husband for nearly the whole of her marriage, except the period prior to the Child's birth.

Of the two, Father appears more emotionally stable. However, to the Court's knowledge, neither party has been diagnosed with any mental health or physical conditions which would disqualify them as the primary custodial parent for the Child.

Accordingly, the Court finds that consideration of the fifteenth custody factor favors neither party.

### 16. *Any other relevant factor.*

Pursuant to D.K. v. S.P.K., 102 A.3d 467 (Pa. Super. 2014), in a custody case where neither parent is relocating and only the children stand to move a significant distance if custody

11

would shift from one parent to another, the court should consider the relevant factors of 23 Pa.C.S.A. § 5337(h) under the catchall provision of § 5328(a)(16). Id. at 477-78. And so, the Court will consider the third and seventh relocation factors as being relevant and not already encompassed by the foregoing analysis.

### (3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

For the reasons set forth above, including both the distance between Pennsylvania and Texas and the emotional and developmental issues pertaining to the Child, it is most difficult to see how the Child's relationship with both parents can be preserved, unless both parents determine to work together in a constructive manner. If the parties do not work together for the best interest of the Child to develop and maintain a relationship with both parents, then one parent will lose and, with him or her, so will the Child. To avoid such a terrible prospect for the Child, both parents will have to sacrifice time and money. Relatively, it appears to the Court that Father has more money and Mother more time. On that basis, the parties should work together accordingly to develop and implement solutions and compromises.

Based upon the foregoing, the Court finds that consideration of the third relocation factor favors neither party, but that the Court's analysis should compel each party to work with the tools at their disposal to achieve what is in the best interest of the Child, that being a relationship with both Mother and Father built upon a firm enough foundation with each to last their lifetimes.

### (7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity

At some level, relocation to Texas would greatly enhance the Child's quality of life. Father is gainfully employed as a senior engineer for Linde in Houston, Texas. Father has the financial wherewithal and the educational background and desire to provide the Child with opportunities to be successful not available or provided in Mother and Maternal Grandmother's home.

Should the Child remain in Mother's custody, he is likely to remain in his present circumstances living with his maternal grandmother in a mobile home with limited contact with friends or other outside influences.

As such, the Court finds that consideration of the seventh relocation factor favors Father.

Accordingly, the Court enters the following Order:

13

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY
## COMMONWEALTH OF PENNSYLVANIA
### CIVIL DIVISION – CUSTODY

M.F.C.
　　　　Plaintiff,

v.

C.K.
　　　　Defendant.

)
)
)
)
)
)
)

No. 33 of 2014-D

## ORDER OF COURT

AND NOW, to wit, this 27th day of September, 2017, after a custody trial in the above matter, it is hereby ORDERED, ADJUDGED and DECREED as follows:

Plaintiff M.F.C. ("Father") and Defendant C.K. ("Mother") shall have shared legal custody of their minor child, Z.M.C. , born September 2006 ("Minor Child").

Shared legal custody means that the parties share responsibility for all major decisions concerning the education, medical care, dental care, religion, and all other matters which concern the general welfare of the Minor Child. For this purpose, the parties sharing legal custody shall consult and confer with each other on matters affecting the welfare of the Minor Child. They shall take into account the best interests of the Minor Child, and to the extent possible, the wishes of the Minor Child.

The parties sharing legal custody shall be entitled to complete access and information from any doctor, dentist or other health care provider treating the Minor Child. The names, addresses and telephone numbers of each party sharing legal custody shall be listed by each health care provider with a notation that all parties sharing legal custody shall be notified in case of an emergency involving the Minor Child.

The parties sharing legal custody shall be entitled to have complete access and information from any school or school authority instructing the Minor Child. The addresses and

telephone numbers of each party sharing legal custody shall be listed on school records with a notation that all parties sharing legal custody shall be notified in case of an emergency involving the Minor Child.

Each party sharing legal custody shall have complete access to the religious records of the Minor Child.

Each party sharing legal custody shall have full authority to sign for emergency medical care, school absences, and any other activity requiring a signature of a parent or guardian. Each party sharing legal custody shall endeavor to keep the other party notified of school conferences and programs, as well as other extracurricular school and community activities affecting the Minor Child.

Primary physical custody of the Minor Child is granted to Mother. Father shall have partial physical custody of the Minor Child as follows:

1) In Texas, for the entirety of the Minor Child's Christmas school break.
2) In Texas, for six consecutive weeks, beginning on the first Sunday following the Minor Child's last day of school.
3) In Pennsylvania (or within one day's drive of Mother's home), for one weekend in each calendar month between, and including, September through May, but excluding December, from 5:00 p.m. on Friday until 8:00 p.m. on Sunday. Father shall give Mother at least twenty (20) days of notice of each weekend he intends to exercise custody.

For Father's periods of partial physical custody of the Minor Child in Texas, Father shall pay for the costs of the Minor Child's transportation to and from Texas. Mother may accompany the Minor Child to Texas, and Father shall pay for Mother's transportation costs to and from Texas. Further, should Mother accompany the Minor Child to Texas for Christmas break, Father shall pay reasonable costs for Mother's lodging while she is in Texas. Should Mother accompany the Minor Child to Texas in the summer, Mother and Father shall equally share the reasonable costs for Mother's lodging on a 50/50 basis. Mother may have daily physical contact with the Minor Child while in Texas or, if not accompanying the Minor Child, Mother may have

reasonable telephone contact with the Minor Child while the Minor Child is visiting Father in Texas.

Each party during his or her periods of physical custody may take the Minor Child on vacation, including to out-of-state or foreign country locations. Each party shall notify the other party in writing at least thirty (30) days in advance of any vacation trip. Each party shall advise the other party of the physical location of the Minor Child and of a telephone number for emergency contact.

The party having physical custody of the Minor Child shall ensure he attends his school and extra-curricular activities during the party's periods of physical custody. The parties shall keep each other advised of the current activities and schedules for the Minor Child to facilitate the participation of the Minor Child and the scheduling of visits.

Each party shall have reasonable telephone contact with the Minor Child when she is in the physical custody of the other party.

The parties agree that the Minor Child shall continue to receive therapy from his present counselor, or from his present counselor until Mother and Father mutually agree upon another counselor, that will prepare the Minor Child for his periods of partial physical custody with Father.

There shall be no discussion of any adult issue existing between the parties either directly with the Minor Child or in the presence of the Minor Child.

No party shall permit, either directed to or in the presence of the Minor Child, the use of disparaging, insulting, vulgar, obscene or threatening language concerning the other party, his/her family or significant other. This prohibition shall include social media.

Each party shall refrain from placing the Minor Child in a position of relaying or conveying messages to any other person as to custody arrangements. The parties shall discuss these matters directly between themselves without the use of or interference from third parties.

The parties may decide different time arrangements other than those provided in this Order of Court and make decisions whenever they mutually agree on any proposed change.

Nothing in this Order of Court shall limit or restrict the ability of the parties to mutually agree on alternative parenting arrangements. If for any reason the parties cannot agree on a proposed change, the terms of this Order of Court shall be followed, unless and until modified by further order of the Court.

A party proposing to change the residence of the Minor Child, which significantly impairs the ability of a non-relocating party to exercise custodial rights, shall follow the procedures required by 23 Pa.C.S.A. § 5337, Pennsylvania Rule of Civil Procedure 1915.17, and Westmoreland County Local Rule of Civil Procedure W1915.17.

Westmoreland County asserts its exclusive continuing jurisdiction and venue in the above custody matter under the Uniform Child Custody Jurisdiction and Enforcement Act, 23 Pa.C.S.A. § 5401 *et seq.*

This Order of Court shall supersede all other custody orders in this matter and shall remain in full force and effect until further Order of Court.

**BY THE COURT:**

Timothy A. Krieger, Judge

Attest:

Christina O'Brien, Prothonotary

cc: J. Douglas Farrell, Counsel for Defendant/Mother – 229 S. Maple Ave., Greensburg, PA 15601
Elizabeth J. McCall, Counsel for Plaintiff/Father – 20 N. Pennsylvania Ave., Ste. 201, Greensburg, PA 15601
Jason N. Huska, Esquire, Guardian ad Litem – 400 Main Street, Latrobe, PA 15650
Family Court Administrator
File